IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Tammy Duncan, ) | Civil Action No. 2:14-cv-1905-DCN-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Tammy Duncan, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 46 years old on her alleged disability onset date of February 21, 2011. (R. at 22, 35.) Plaintiff claims disability due to, *inter alia*, degenerative disc disease, ankylosing spondylitis, insomnia, irritable bowel syndrome, and depression and anxiety. (R. at 24.) Plaintiff has a high school education and past relevant work as a deli worker, a convenience store cashier, and a school cafeteria food service worker. (R. at 35.)

Plaintiff filed an application for DIB on April 9, 2011. (R. at 22.) After her application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on October 23, 2012. (R. at 22.) In a decision dated January 23, 2013, the ALJ found that Plaintiff was not disabled. (R. at 22-36.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.
>
> (2) The claimant has not engaged in substantial gainful activity since February 21, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3) The claimant has the following severe impairments: cervical degenerative disc disease with discectomy, ankylosing spondylitis with polyarthritis, insomnia, irritable bowel syndrome, chronic fatigue syndrome, depression and anxiety (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift up to 15 pounds occasionally and lift or carry up to 10 pounds frequently; she can stand or walk for 4-6 hours in an 8-hour day and sit for 4-6 hours in an 8-hour day, with normal breaks. The claimant also requires a sit/stand option at the workstation, consistent with the exertional limitations described above, but she cannot be off task more than 5% of the work period (this off-task time is above and beyond regular, normal breaks and calculates to 3 minutes per hour for each 2-hour segment of work time and is scattered throughout the 2-hour segment); she can sit in up to 60 minute time segments and stand/walk in up to 30 minute time segments in exercising the sit/stand option. Additionally, the claimant can frequently push, pull and reach overhead with the right upper extremity. She can only frequently operate foot controls with the bilateral lower extremities, and she cannot climb ropes, ladders, or scaffolds. She can only occasionally climb ramps or stairs, balance, stoop, kneel, and crawl, and she cannot crouch. The claimant can frequently handle objects (gross manipulation) with the right hand, but she has no handling limitations with the left hand. With her right hand, wrist and arm, she can frequently perform fingering operations (fine manipulation) involving objects no smaller than the size of a paper clip, but has no fingering limitations with the left hand. The claimant

must avoid concentrated exposure to extreme cold, excessive vibration, and hazards (e.g., the use of moving machinery and exposure to unprotected heights). The claimant is also limited to work which involves only simple, routine and repetitive tasks in a low-stress environment (i.e., one that does not require the performance of fast-paced production rate work or fast-pace work).

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on April 4, 1964 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2011, through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner

must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a prima facie showing of disability by showing that she is unable to return to her past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff asserts the ALJ erred in rejecting the opinions of Dr. Leland and Dr. Lawson, both treating physicians. (See Dkt. No. 12 at 22-31 of 34.) Plaintiff also asserts the matter should be remanded because the Appeals Council did not consider Dr. Lawson's Attending Physician's statement or the statement of Shane Smith, Plaintiff's former supervisor. (See id. at 32-33 of 34.)

### A.     **ALJ's Rejection of the Opinions of Dr. Leland and Dr. Lawson**

#### 1. Dr. Leland

Dr. Leland is Plaintiff's primary care physician. In a document dated March 12, 2012, Dr. Leland noted that Plaintiff "suffers from ankylosing spondylitis typical of rheumatoid arthritis," that Dr. Lawson treats Plaintiff with Remicaide every six weeks, and that Plaintiff "has good reason to be in pain" from the ankylosing spondylitis. (R. at 500.) He states, however, that he "would defer to Dr. Lawson regarding any functional limitations [Plaintiff] might have related to the conditions for which he treats her." (R. at 500.) He notes that an MRI from October 12, 2009 shows Plaintiff "has cervical disc disease at C6-7 resulting in mild foraminal stenosis," which "would contribute to her pain." (R. at 500.) Dr. Leland's opinion further states,

> I treat Ms. Duncan primarily for depression, insomnia and irritable bowel syndrome. She suffers from chronic depression and anxiety since 2004. This condition has been moderate severe in the past, but has improved somewhat recently.

5

> At times her depression has not been adequately controlled. We have had to change and increase her medications over time to adequately treat this condition. We started her on Lexapro and then later we added Cymbalta and Abilify. When I added Abilify her depression was not adequately controlled. She is also taking Lyrica. She is compliant with treatment.
>
> Ms. Duncan suffers from a combination of problems that would affect her ability to concentrate in a work environment for at least the past couple of years. It is consistent with her condition that she would most probably suffer interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day. This would be due to a combination of her chronic pain, insomnia, depression and irritable bowel syndrome. The side effects of her many medications would contribute to causing interruptions to concentration. She could have more limitations than what I have listed here, but I decline to comment on condition[s] for which I do not treat her.

(R. at 500.)

With respect to Dr. Leland's opinion, the ALJ stated,

> I have . . . considered the March 2012 opinion of Dr. Leland that the combination of the claimant's conditions affect her ability to concentrate in a work environment. He stated that due to the combination of her chronic pain, insomnia, depression and IBS, as well as medication side effects, the claimant will likely experience concentration problems that will frequently interrupt her performance of tasks throughout the workday. (Exhibit 29F). In light of his longstanding treating relationship with the claimant, I have given some weight to Dr. Leland's opinion that the claimant will have difficulty concentrating in limiting her to simple, routine and repetitive tasks in an environment that does not require fast-paced production rate or fast-paced work. However, Dr. Leland's opinion that the claimant will frequently be unable to sustain concentration on tasks is not consistent with his own treatment notes, which do not reflect any objective concentration deficits. This opinion is also inconsistent with the claimant's performance at her October 2011 consultative examination, as she performed simple arithmetic problems without difficulty, alternated between the numbers 1 through 13 and the letters A through M in 29 seconds without error, and read and followed a written command. Therefore, because there is no basis for his speculation that the combination of the claimant's symptoms will frequently preclude her ability to perform tasks, I have given that portion of his opinion little weight.

(R. at 33-34.)

Plaintiff asserts the ALJ's rejection of Dr. Leland's opinion that Plaintiff would frequently be unable to concentrate is erroneous because "Dr. Leland's treatment notes do not indicate that Duncan had no concentration problems." (Dkt. No. 12 at 24 of 34.) Plaintiff states,

> Silence, as to specific *impairment*,–which, as opposed to *conditions*, are rarely ever described in any treatment notes–in a doctor's records is not logically inconsistent

6

> with a later statement of impairments; and logical inconsistency must be shown before treating records can be used to discount opinions.

(Dkt. No. 12 at 24 of 34.) Plaintiff further contends that her performance on "simple intellectual tests does not contradict Dr. Leland's opinions." (Dkt. No. 12 at 25 of 34.) Plaintiff states, "Duncan's ability to count by 2's or recite the alphabet is not inconsistent with the ability to concentrate throughout a workday in a normal work environment." (Id.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; see also 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Even so, "the rule does not require that the [treating physician's opinions] be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (citing Campbell v. Bowen, 800 F.2d 1247, 1250 (4th Cir. 1986)).[2] The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; see also 20 CFR § 404.1527(c)(2).

Here, the undersigned finds no reversible error in the ALJ's analysis of Dr. Leland's opinion. The ALJ stated that he gave "some weight to Dr. Leland's opinion that the [Plaintiff] will have difficulty concentrating in limiting her to simple, routine and repetitive tasks in an environment that

---

[2] But see 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

does not require fast-paced production rate or fast-paced work." (R. at 33.) Of course, simply because Dr. Leland was a treating physician does not mean that his opinion was entitled to controlling weight. See Hunter, 993 F.3d at 35. Plaintiff asserts that the opinion of the consultative examiner, Dr. Hammond, does not contradict that of Dr. Leland, but the undersigned does not agree. Although Dr. Hammond "did not document any objective concentration deficits upon mental status examination," the ALJ gave "great weigh to his opinion that the [Plaintiff] will have moderate limitations in concentration" in light of Plaintiff's "mental disorders and her subjective complaints [as well as] Dr. Hammond's expertise as a psychologist." (R. at 32.) Even though Plaintiff "perform[ed] adequately" on tests administered by Dr. Hammond, Dr. Hammond concluded Plaintiff "demonstrated up to moderate limitations in terms of concentration, persistence, and pace." (R. at 451.) Dr. Hammond's report–as noted by the ALJ–indicates that Plaintiff "could read and follow a written command" and that Plaintiff "reported she enjoyed reading and generally read one book per week." (R. at 26; see also R. at 450-51.) In concluding that Plaintiff has "moderate difficulties" with respect to concentration, persistence, or pace, the ALJ also relied on Plaintiff's report that although she has concentration problems, she "can pay attention as long as needed and generally follows instructions well." (R. at 27; see also R. at 136.) In light of the foregoing, the undersigned recommends concluding that the ALJ's analysis of Dr. Leland's opinion is supported by substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." (internal quotation marks and citations omitted)).

### 2. Dr. Lawson

Dr. Lawson is Plaintiff's treating rheumatologist. On February 15, 2012, Dr. Lawson completed a questionnaire in which he indicated that Plaintiff was unable to work eight hours a day, five days a week, due to her ankylosing spondylitis and fibromyalgia. (See R. at 498-99.) The

following question appeared on the questionnaire: "What are the bases for your opinion that Tammy Duncan suffers from the above impairments at the above level of severity?" (R. at 499.) Dr. Lawson's response to that question was "YES." (R. at 499.) He stated that April 9, 2007 was the earliest date he was "sure" that Plaintiff "was so disabled." (R. at 499.)

> In assessing Dr. Lawson's opinions, the ALJ stated,
>
> I have . . . considered the February 2012 opinion of Jeffrey Lawson, M.D., that the claimant is unable to work 8 hours per day, 5 days per week secondary to her ankylosing spondylitis and fibromyalgia. Dr. Lawson opined that the claimant has been disabled since April 9, 2007. (Exhibit 28F). However, the issue of disability is one explicitly reserved for the Commissioner, and notably, Dr. Lawson's opinion that the claimant has been disabled since April of 2007 is inconsistent with her ability to work on a full-time basis until February 2011. Dr. Lawson also failed to set forth any specific limitations to support his opinion that the claimant cannot work 8-hours a day, 5 days a week. Rather, he referenced only the claimant's ankylosing spondylitis, which treatment notes consistently reflect has been stable with Remicade infusions. While he also cited the claimant's fibromyalgia, as noted previously, the claimant's diagnosis of fibromyalgia is documented only a few times in the medical record, and the treatment notes do not reflect that the claimant's fibromyalgia meets the requirements of a medically determinable impairment under Social Security Ruling 12-2p.
>
> Moreover, Dr. Lawson's opinions are inconsistent with his own treatment notes, which reflect no objective abnormalities to support his assessment. By way of example, in May 2011, Dr. Lawson noted the claimant demonstrated some tenderness and limited range of motion of the spine and tenderness of the chest wall and hips but otherwise demonstrated a normal gait and full range of motion and strength of the upper and lower extremities, with no swelling and erythema and full strength. (Exhibit 15F). Likewise, in September 2011, Dr. Lawson noted the claimant's ankylosing spondylitis was stable, and he documented no new objective abnormalities since the claimant's May 2011 examination. (Exhibit 18F). In his January 2012 treatment notes, Dr. Lawson noted the claimant's spondylitis appeared stable with Remicade infusion, and he documented only some tenderness of her spine and moderate pain of her lower extremities. (Exhibit 26F). Additionally, in his March 2012 treatment notes, dated less than one month after his February 2012 opinion, Dr. Lawson noted the claimant was doing well with her ankylosing spondylitis and that her fibromyalgia had improved since starting Lyrica. (Exhibit 30F). Accordingly, because Dr. Lawson's treatment notes and examination findings do not support his opinion that the claimant cannot work on a regular and consistent basis, I have given his opinion little weight.

(R. at 33.)

Plaintiff contends that Dr. Lawson's opinion "was still entitled to evaluation even if it touched upon an issue reserved to the Commissioner." (Dkt. No. 12 at 27 of 34.) Plaintiff further asserts the ALJ erred in failing to consider "that accommodations were made for Duncan during her full-time work, and that a doctor cannot be presumed to use the Commissioner's definition of disability." (Dkt. No. 12 at 27 of 37.) Finally, Plaintiff asserts that "references to stability do not equate with ability to work," and "Dr. Lawson's opinions are not contradicted by his diagnosis of fibromyalgia." (Dkt. No. 12 at 29, 31 of 34.)

The undersigned finds Plaintiff's arguments unavailing. Contrary to Plaintiff's assertions, the ALJ did consider Dr. Lawson's opinion that the claimant has been disabled since April 9, 2007, and gave his opinion "little weight." (R. at 33.) In weighing that opinion, the ALJ correctly noted that a determination of disability is an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(d). Although Plaintiff complains that the ALJ failed to consider "that accommodations were made for Duncan during her full-time work," Plaintiff's ability to work full time–even with some accommodations–is contrary to Dr. Lawson's opinion that Plaintiff is unable to work eight hours a day, five days a week. Similarly, Plaintiff's assertion that "a doctor cannot be presumed to use the Commissioner's definition of disability" does not require reversal. (See Dkt. No. 12 at 27 of 37.) Dr. Lawson clearly opined that Plaintiff was unable to work eight hours a day, five days a week. (See R. at 498-99.)[3] Finally, although stability alone does not mean Plaintiff's condition was not disabling, see Hemminger v. Astrue, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008), the ALJ set forth a sufficient basis for giving Dr. Lawson's opinions little weight. As the ALJ noted, Dr. Lawson's opinion "failed to set forth any specific limitations to support his opinion that the claimant cannot

---

[3] In response to Plaintiff's argument concerning Dr. Lawson's definition of "disability," (see Dkt. No. 12 at 28 of 34), the undersigned notes that Dr. Lawson plainly indicates his opinion that Plaintiff is unable to work eight hours a day, five days a week. Dr. Lawson's opinion that Plaintiff is "disabled" is therefore far more in line with the Social Security definition of "disability" than the definition of "disability" pursuant to the Americans with Disabilities Act. Compare 42 U.S.C. § 423(d)(1)(A) with 42 U.S.C. § 12102(1).

work 8-hours a day, 5 days a week." (R. at 33.) In fact, the questionnaire completed by Dr. Lawson contains the following question and answer:

> 8. What are the bases for your opinion that Tammy Duncan suffers from the above impairments at the above level of severity?
>
> YES.

(R. at 499.) Furthermore, and as detailed by the ALJ, it appears that Plaintiff's conditions–while severe–respond well to the treatment regimen prescribed by Dr. Lawson. (See R. at 33.) The undersigned therefore recommends affirming the Commissioner's decision. See, e.g., Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011) (no reversible error in ALJ's decision to afford less weight to treating physician where, *inter alia*, the treating physician "listed [the plaintiff's] diagnoses, but failed to explain how her conditions impacted her abilities," instead "opin[ing] in his conclusory fashion that [the plaintiff] was 'permanently and totally disabled' and 'will never be able to perform substantial gainful work activity.'")

### B.    **Failure of Appeals Council to Consider Evidence**

Plaintiff complains that the Appeals Council failed to consider two pieces of "new and material" evidence submitted to it: (a) the December 18, 2013 Physician's Statement of Dr. Lawson, and (b) the April 22, 2013 statement from Shane Smith, Plaintiff's former supervisor. (See Dkt. No. 12 at 32 of 34; see also R. at 7-9.) Dr. Lawson's December 18, 2013 Physician's Statement indicates his opinion that Plaintiff is permanently "unable to work, or participate in activities to prepare for work" due to her ankylosing spondylitis. (R. at 7-8.) Shane Smith, Plaintiff's former supervisor, stated as follows in his April 22, 2013 statement:

> I worked with Tammy Duncan from approximately 2002 until 2008 or 2009. I am the store manager at a convenience store. She was assistant manager during the time period I worked with her so I was her supervisor. She would do the paperwork including closing out the cash register at the end of shifts. She did not set schedules or hire and fire. After she had the surgery on her neck she could not lift things anymore. She could only do sit down work, and then it just got where she could not even do that anymore. She appeared to be in pain. She still had to run the register and then close her register out when she got off. It was getting to where I was pretty much

> doing her paperwork for her because she was in too much pain at the end of her shift to do it. It seemed that the longer she was here during the day the more pain she was in. She would normally try to stick it out for a whole shift, but she did leave early a couple times. She eventually quit because she could not do it anymore. She did a great job prior to having this neck issue. I have no doubt she was just in too much pain to be able to do even sit down work anymore for a whole work day.

(R. at 9.)

The regulations provide, *inter alia*,

> The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any *new and material* evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application. . . .

20 C.F.R. § 404.976(b)(1) (emphasis added); see also 20 C.F.R. § 404.970(b). "Evidence is new . . . if it is not duplicative or cumulative," and "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). In Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit held that where the treating physician in that case submitted a letter to the Appeals Council detailing Plaintiff's injuries and recommending significant restrictions on Plaintiff's activity, it "simply [could not] determine whether substantial evidence support[ed] the ALJ's denial of benefits" because the ALJ, in rendering his decision, had specifically emphasized that the record before him did not include any restrictions from the treating physician. Meyer, 662 F.3d at 707. The Meyer court stated, *inter alia*,

> [N]o fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

Id.

In the instant case, Plaintiff makes much of the fact that the Appeals Council "specifically indicated that [it] 'considered' additional information 'listed on the . . . Order of Appeals Council.'" (Dkt. No. 12 at 33 of 34.) Plaintiff notes that the only exhibit listed on the Appeals Council's order is Exhibit 20E, which is a brief by Plaintiff's attorney. (Dkt. No. 12 at 33 of 34; see also R. at 5.) Plaintiff states, "Since the Appeals Council affirmatively listed the evidence it did consider, and since it did not list [Dr. Lawson's December 18, 2013 Physician's Statement or Shane Smith's April 22, 2013 statement], it is plain that it did not consider this evidence." (Dkt. No. 12 at 33 of 34.) Plaintiff asserts the Commissioner "failed to follow the affirmative injunction of 20 C.F.R. § 404.976(b)(1), which requires that [the Appeals Council] consider the evidence." (Id.)

However, 20 C.F.R. § 404.976(b)(1) only requires the Appeals Council to consider evidence before the ALJ and "new and material evidence." Dr. Lawson's December 18, 2013 Physician's Statement is duplicative of his opinion–thoroughly analyzed by the ALJ–that Plaintiff is unable to work eight hours a day, five days a week. Accordingly, the Appeals Council did not "fail[] to follow the affirmative injunction of 20 C.F.R. § 404.976(b)(1)."

The undersigned also finds no error with respect to Shane Smith's statement. It is not clear that Mr. Smith's statement is "new" evidence, as it appears to be generally duplicative of Plaintiff's testimony at the hearing. (See R. at 49-50.) However, even if the evidence is "new" evidence, it is not material evidence. Mr. Smith stated that he worked with Plaintiff "until 2008 or 2009." (R. at 9.) Mr. Smith's statement details the accommodations provided to Plaintiff in 2009, after she had surgery. But there is no "reasonable possibility that [Mr. Smith's statement] would have changed the outcome." Wilkins, 953 F.2d at 93. The Plaintiff alleged she became disabled on February 21, 2011, not in 2008 or in 2009, and Plaintiff testified at the hearing that after the surgery on her neck, the "problems" there went away "[f]or the most part." (R. at 51-52.) Mr. Smith's statement does not "fill an 'evidentiary gap' and is not 'missing evidence,' as was the treating physician's letter in Meyer." Turner v. Colvin, Civ. A. No. 0:14-cv-228-DCN, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015).

The undersigned finds no reversible error and therefore recommends affirming the Commissioner's decision.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 14, 2015
Charleston, South Carolina